UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| JACKIE D. McKINNEY,<br><br>         Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br>         Defendant. | 5:05-CV-0174<br>(LEK/GHL) |

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY & SHURTLIFF, LLP<br>*Counsel for Plaintiff*<br>300 South State Street, Fifth Floor<br>Syracuse, New York 13202 | JAYA A. SHURTLIFF, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br> Northern District of New York<br>*Counsel for Defendant*<br>P.O. Box 7198<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | BARBARA L. SPIVAK, ESQ.<br>Assistant United States Attorney |

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[2]

**I. BACKGROUND**

  **A. Procedural History**

  Plaintiff protectively filed the current application for disability insurance benefits ("DIB")

---

[1] The complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of Social Security. On February 12, 2007, Michael J. Astrue assumed that position. Therefore, he shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2] This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

and supplemental security income ("SSI"), alleging disability as of June 5, 2002. (Administrative Transcript ("T") at 73-75, 294-96.) The application was denied initially. (T. at 50-54.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 21, 2004, before ALJ Robert Gale. (T. at 55, 23-48.) ALJ Gale issued a decision on September 24, 2004 which found that Plaintiff was not disabled. (T. at 14-21.) That decision became the final decision of the Commissioner on December 30, 2004, when the Appeals Council denied Plaintiff's request for review. (T. at 6-8.) This action followed.

    **B.**    **The Contentions**

Plaintiff makes the following claims:

(1) The ALJ did not adequately evaluate whether Plaintiff's alleged back impairments were of the severity to meet or equal Listing 1.04, Disorders of the Spine, of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Dkt. No. 9 at 13-16.)

(2) The ALJ failed to follow the treating physician rule. (Dkt. No. 9 at 16-18.)

(3) The ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence. (Dkt. No. 9 at 18-20.)

(4) The ALJ failed to properly assess Plaintiff's credibility. (Dkt. No. 9 at 20-22.)

Defendant disagrees, and argues that the decision should be affirmed. (Dkt. No. 12 at 1-20.)

**II.**    **APPLICABLE LAW**

    **A.**    **Standard for Benefits**

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the SSA has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[1]  If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[1]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25 (other citations omitted)).

      B.    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, *4 (S.D.N.Y. Apr. 15, 2003); *Serrano*, 2003 WL 22683342 at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (U.S. 1971) (quoting

*Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *see also Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial evidence supporting the ALJ's decision. *Williams*, 859 F.2d at 258.

**III.   THE PLAINTIFF**

Plaintiff was forty-seven years old at the time of the hearing on June 21, 2004.  (T. at 73.)  She completed high school.  (T. at 99.)  She previously worked as a nurse's assistant, working primarily in nursing homes.  (T. at 93.)  Plaintiff alleges disability due to chronic lumbar radicular syndrome, thoracolumbar spondylosis without myelopathy, cervical spine pain, and sensory polyneuropathy.  (Dkt. 9 at 2.)

**IV.   THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff met the nondisability requirements for a period of disability and DIB set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of the decision (September 24, 2004); (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (June 5, 2002); (3) Plaintiff's thoracolumbar spondylosis without myelopathy, sensory polyneuropathy and cervical strain were "severe" under the regulations 20 C.F.R. §§ 404.1520(c) and 416.920(b); (4) these medically determinable impairments do not meet or medically equal one of the listed impairments of 20 C.F.R. Part 404, Subpart P,

Appendix 1; (5) Plaintiff's allegations regarding her limitations were not totally credible; (6) Plaintiff retained the RFC to lift, carry, push and pull ten pounds frequently and twenty pounds occasionally, stand and walk six hours and sit six hours in an eight-hour work day and occasionally climb, balance, stoop, kneel, crouch, and crawl; (7) Plaintiff was unable to perform any of her past relevant work under 20 C.F.R. §§ 404.1565 and 416.965; (8) Plaintiff was a "younger individual" between the ages of forty-five and forty-nine; (9) Plaintiff had a high school education; (10) transferability of skills was not an issue in this case; (11) Plaintiff retained the RFC to perform the full range of light work under 20 C.F.R. §§ 404.1567 and 416.967; (12) based on an exertional capacity for light work, and Plaintiff's age, education, and work experience, a finding of "not disabled" was directed by Medical-Vocational Rules 202.21 and 202.22; and (13) Plaintiff was not under a "disability as defined in the Social Security Act at any time through the date of the decision. (T. at 20-21.)

V.   **DISCUSSION**

   A.   **Plaintiff failed to establish that her back impairments met the requirements of Listing 1.04, Disorders of the Spine.**

A claimant is automatically entitled to benefits if his or her impairment(s) meets the criteria set forth in Appendix 1 to Subpart P of Part 404. 20 C.F.R. § 404.1520(d) (2007) (the "Listings"). Plaintiff first claims that the ALJ erred by failing to find that her back condition met the requirements of Listing 1.04(A), Disorders of the Spine. (Dkt. No. 9 at 13-16.) Defendant argues that Plaintiff's impairments did not meet the severity of a listed impairment. (Dkt. No. 12 at 5-8.)

Listing 1.04(A) provides as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

-6-

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Thus, in order to satisfy this listing, Plaintiff must establish that (1) she has a disorder of the spine which compromises a nerve root or the spinal cord, and (2) that this disorder is manifested by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[3]

An MRI of Plaintiff's lumbar spine, taken on July 22, 2002, revealed a tiny disc protrusion at C5-6 and C5-7 without neural encroachment, normal thoracic spine, or lumbar spine degenerative disc disease at all levels with neuroforaminal bulging discs.  (T. at 184.)  A nerve conduction study was performed on November 8, 2002, and found results consistent with a mild underlying sensory polyneuropathy affecting primarily myelin components, with no additional electrodiagnostic evidence seen suggestive of a superimposed lumbosacral radiculopathy or of an isolated superimposed peripheral nerve compression.  (T. at 204.)  The results of these objective clinical tests do not indicate that Plaintiff's spinal impairments resulted in compromise of a nerve root or the spinal cord, as required by Listing 1.04(A).

Moreover, treatment notes from Plaintiff's physicians do not establish that she suffered from

---

[3] The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure. Andersson and McNeill, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein, 1989).

the physical limitations required by Listing 1.04(A).  Plaintiff was examined on August 10, 1999 by Dr. Richard Zogby.  (T. at 141.)  Dr. Zogby found Plaintiff's sensory exam to be within normal limits, Plaintiff had a negative straight leg raising ("SLR") bilaterally, intact reflexes, and some range of motion ("ROM") of the lumbar spine.  (T. at 141.)

During the period from June through August of 2002, Dr. James LoDolce, Plaintiff's treating physician, repeatedly found Plaintiff's reflexes in the upper and lower extremities to be intact.  (T. at 181, 183-84, 213.)  Upon examination by Dr. Martin Schaeffer on October 6, 2002, Plaintiff had full 5/5 muscle strength bilaterally in the upper and lower extremities, her light touch was intact on sensory examination, ambulation was within normal limits, cervical ROM was nearly full throughout, and she had no gross muscular spasms.  (T. at 200.)  At this time Plaintiff also had a decreased ROM of the lumbar spine and a positive SLR.  (T. at 200.)  Dr. Stephen Robinson, Plaintiff's treating orthopedist, found on October 11, 2002 that Plaintiff had decreased sensation in the lateral left foot, but intact sensation in the right lower extremity.  (T. at 193.)  Plaintiff had full motor function of both lower extremities, good ROM of both hips and knees, and some back pain with hip movement.  (T. at 193.)

Plaintiff was evaluated by Nurse Practitioner ("NP") Linda Ehrich on January 7, 2003.  (T. at 219-20.)  This evaluation found that Plaintiff had a limited ROM in the neck, positive SLR, normal gait, and intact sensory exam but occasional numbness bilaterally in the lower extremities and feet. (T. at 219-20.)  NP Ehrich evaluated Plaintiff again on June 3, 2004, and found left bilateral cervical paraspinous tenderness especially on the left; decreased flexion, extension and rotation of Plaintiff's cervical spine; decreased bicep and tricep strength, decreased hand grip on the left and decreased sensation to touch.  (T. at 282.)  It should be noted that NP Ehrich is not an acceptable medical

source under the regulations, and the ALJ chose to give her opinions less weight for this reason. *See* 20 C.F.R. § 416.913(a).

On May 12, 2003, Dr. Jeffrey Kahn performed an independent medical examination for insurance purposes. (T. at 267-73.) Dr. Kahn found that Plaintiff's deep tendon reflexes were active and equal in all four extremities, though Plaintiff showed some non-dermatomal sensory loss in the right upper and lower extremities. (T. at 271.) Dr. Robinson examined Plaintiff on January 23, 2004 and March 23, 2004, and found a normal motor examination of the bilateral lower extremities. (T. at 236, 239.) Plaintiff's SLR was negative, to sixty degrees. (T. at 235, 239.) On May 24, 2004, Plaintiff's SLR was negative, to ninety degrees. (T. at 244.)

The medical evidence reviewed above indicates that Plaintiff intermittently showed some of the symptoms necessary to fulfill the requirements of Listing 1.04(A), but it does not establish that Plaintiff experienced every requirement. Plaintiff's most recent SLR was to ninety degrees, and she was routinely examined as having good ranges of motion in her extremities and intact reflexes. (T. at 181, 183-84, 193, 213, 236, 239, 244.) The Listing is clearly worded so as to require the combination of *all* symptoms as well as evidence of a compromised nerve root or spinal cord. Since the evidence fails to establish these requirements, the ALJ's decision that Plaintiff's impairments did not satisfy the Listings was supported by substantial evidence.

Plaintiff also argues that the ALJ's analysis at step three was insufficient, as he made a conclusory statement that Plaintiff's impairments did not meet the severity of a listed impairment. (T. at 16; Dkt. No. 9 at 13-15.) In support of this argument, Plaintiff cites case law from the Third and Tenth Circuits. (Dkt. No. 9 at 14.) However, as the Commissioner points out, there is relevant Second Circuit precedent on point, which holds that the absence of an express rationale at step three

does not prevent the reviewing court from upholding the ALJ's determination regarding Plaintiff's claimed listed impairments, if portions of the ALJ's decision and the evidence before the ALJ indicate that his conclusion was supported by substantial evidence. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1984). As discussed above, there was substantial evidence in the record to support the ALJ's conclusion that Plaintiff's impairments did not meet Listing 1.04. The Court therefore declines to recommend remand on this basis.

> B. **The ALJ Did Not Err in Applying the Treating Physician Rule.**

Plaintiff argues that the ALJ failed to follow the treating physician rule when assigning weight to the medical opinions of record. (Dkt. No. 9 at 16-18.) Defendant argues that the ALJ properly weighed the opinions of Plaintiff's treating physicians. (Dkt. No. 12 at 8-11.) Ordinarily, a treating physician's opinion is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. *Veino v. Barnhart*, 312 F.3d 578 (2d Cir. 2002); *Barnett v. Apfel*, 13 F. Supp. 2d 312 (N.D.N.Y. 1998). Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the treating physician's own contradictory findings as well as opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

The ALJ must properly analyze the reasons for giving less than controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Halloran*, 362 F.3d at 32. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, the ultimate determination of whether a person

meets the statutory definition of disability is left with the Commissioner and the ALJ is under no duty to afford controlling weight to any opinion as to such determination.  20 C.F.R. § 416.927(e)(1).

In deciding what weight, if any, an ALJ should accord to medical opinions, he may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).  Failure to apply the appropriate legal standards for considering a treating physician's opinion is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of a treating physician's opinion.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

The ALJ considered the weight to be given to various medical opinions, concluding that Dr. Robinson's opinions of disability were not to be assigned controlling weight because they stated conclusions of disability, a finding that is properly left to the Commissioner.  (T. at 18.)  This reasoning was proper.  As stated above, the ALJ is under no duty to afford controlling weight to any opinion that a plaintiff meets the definition of disability, regardless of whether this opinion comes from a treating source.  *See* 20 C.F.R. § 416.927(e)(1).  "[T]he [ALJ] considers the data that physicians provide but draws [his] own conclusions as to whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ assigned minimal weight to the opinions of nurse practitioners at the New York Pain Center, stating that these sources were not acceptable medical sources under the regulations.  (T. at 18.)  This assignment was also proper, as the nurse practitioners were not acceptable medical

sources under 20 C.F.R. § 416.913(a).  Although their opinions receive consideration, they are not subject to the treating physician rule and are not entitled to any particular weight.  *See id.*; *Zervas v. Barnhart*, 2007 WL 1229312, *4 (E.D.N.Y. 2007).

Reports from Drs. Tiso, Catania, and Axelrod to the Workers' Compensation Board were not given any weight because they "[were] unsigned and include[d] no signs, symptoms or findings, only diagnoses."  (T. at 18.)  The ALJ was warranted in considering the lack of reasoning behind these opinions, as this is one of the factors to be considered when weighing a medical source opinion.  *See Schisler*, 3 F.3d at 568; 20 C.F.R. §§ 404.1527, 416.927.  Moreover, opinions provided for workers' compensation purposes are not binding on the Commissioner.  *See* 20 C.F.R. §§ 404.1504, 416.904.  For the foregoing reasons, the ALJ properly weighed the medical opinions of record and did not fail to follow the treating physician rule.  The Court thus declines to recommend remand on this basis.

        **C.**       **The ALJ's Assessment of Plaintiff's RFC is Supported by Substantial Evidence.**

RFC is what a claimant is capable of doing despite his impairments. 20 C.F.R. § 404.1545(a). In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. § 416.945; *see Martone v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y 1990)).  An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Verginio v. Apfel*, 1998 WL 743706, *3 (N.D.N.Y Oct. 23, 1998); *LaPorta*, 737 F. Supp. at 183.

In this case, the ALJ found that Plaintiff retained the RFC to perform the full range of light work.  (T. at 21.)  Specifically, the ALJ found that Plaintiff could lift, carry, push and pull ten pounds

frequently and twenty pounds occasionally, stand and walk six hours and sit six hours in an eight-hour work day and occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. at 20.)

Plaintiff argues that the ALJ failed to properly discuss the medical evidence before coming to this RFC determination. (Dkt. No. 9 at 18-20.) Plaintiff claims that the ALJ failed to consider certain evidence when coming to his decision, such as Dr. Robinson's opinions of January 31, 2003 and March 23, 2004 that Plaintiff could lift a maximum of two pounds. (T. at 229, 237.) However, the ALJ did specifically address this opinion in his analysis of the medical evidence. (T. at 17.) The ALJ determined that this assessment was not in accord with the medical evidence, and also explained that Dr. Robinson's overall opinions of Plaintiff's disability were given little weight because they represented a conclusion that was reserved to the Commissioner. (T. at 18.) The Court has already found that the ALJ properly afforded less than controlling weight to these opinions.

Although Plaintiff argues that the ALJ did not engage in any of the appropriate analysis required for an RFC assessment under SSR 96-8p, the ALJ's decision belies this contention. It contains a thorough analysis of the medical records and an ultimate conclusion of how these records impacted Plaintiff's RFC. The ALJ was not required to address every single piece of medical evidence in his decision; it was enough that he discussed the crucial elements with sufficient specificity to allow the reviewing court to determine whether the decision was supported by substantial evidence. *See Jones v. Barnhart*, 2004 WL 3158536, *6 (E.D.N.Y. 2004) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). The ALJ fulfilled this duty, and the Court will not recommend remand on this basis.

### D.     Credibility

The ALJ has discretion to appraise the credibility of witnesses, including testimony of a

plaintiff concerning subjective complaints of pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  After considering a claimant's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject a claimant's subjective testimony.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2007); *Martone*, 70 F. Supp. 2d at 151.

If the ALJ rejects a claimant's subjective testimony, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).  Where the ALJ's findings are supported by substantial evidence, the reviewing court must uphold the ALJ's decision to discount Plaintiff's subjective complaints of pain.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citing *McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701 (2d Cir. 1980).

The ALJ's decision acknowledged the existence of severe impairments and Plaintiff's accompanying allegations of pain and limitations, but found that Plaintiff's testimony regarding her symptoms was not consistent with the medical record as a whole.  (T. 18.)  In reaching this decision, the ALJ noted that Plaintiff was able to sit through the entire hearing with no obvious discomfort and get up from the chair without apparent difficulty.  (T. at 17.)  However, Plaintiff testified that she could not sit for more than one minute at a time without having to shift positions, walk more than one block or lift and/or carry more than two pounds.  (T. at 36-37, 44.)   The ALJ also noted that Plaintiff's daily activities included dressing and bathing, making easy-to-prepare meals, doing some household chores, reading, watching television, using the computer, doing some shopping, and going to church about once a month.  (T. at 17, 38-40.)

In terms of medical evidence, the ALJ pointed out treating physician Dr. LoDolce's note that Plaintiff's MRI results did not correlate well with her reported symptoms. (T. at 17, 184.)  The ALJ also noted that Dr. Schaeffer's electrodiagnostic testing was consistent with mild sensory polyneuropathy but that the muscular component of the testing was noted to be very healthy with no delayed F-wave seen. (T. at 17, 202.)  The ALJ considered this evidence in combination with the entire medical record, and assigned weight to the various medical source opinions, which determination the Court has already decided was proper. (*See* T. 17-20.)  The ALJ's decision reflects that, when reaching his conclusion regarding Plaintiff's credibility, he properly considered Plaintiff's daily activities, his own observations of Plaintiff, and the consistency of Plaintiff's subjective complaints with the medical record as a whole.

The ALJ followed the proper analysis in discounting Plaintiff's subjective complaints of pain. The ALJ's skepticism in this regard was properly explained and supported by substantial evidence of record, and thus cannot be disturbed on review. *Aponte*, 728 F.2d at 591.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 2, 2008
　　　　Syracuse, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　George H. Lowe
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge